Filed 7/3/14  P. v. Kwolek CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>GILBERT ANTHONY KWOLEK,<br><br>Defendant and Appellant. | F065102<br><br>(Super. Ct. Nos. 11CM2787 & 11CM0373)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kings County.  Thomas DeSantos, Judge.

Gillian Black, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Robert Gezi, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

A jury convicted appellant Gilbert Anthony Kwolek of violating Penal Code section 245, subdivision (a)(1) (assault with a deadly weapon, to wit, a vehicle)[1] and, in a subsequent court trial, the allegations that he had suffered a prior serious felony pursuant to section 667, subdivision (a)(1), and pursuant to sections 1170.12, subdivisions (a) to (d), and 667, subdivisions (b) to (i) were found to be true. The court granted a substitution of counsel and relieved appellant's appointed trial counsel. A new trial motion was filed and heard, and denied by the court. At sentencing, the court granted appellant's *Romero*[2] motion to strike his previous strike conviction. He was sentenced to the middle term of three years in state prison plus the five-year enhancement under section 667, subdivision (a)(1), for a total term of eight years. He was also sentenced on a trailing violation of probation case, in which the court denied reinstatement of probation and sentenced him to 180 days with credit for time served. Fees and fines were also imposed.

On appeal, appellant contends his trial counsel was ineffective, the evidence was insufficient to support a conviction, and the prosecutor committed acts of prejudicial misconduct. We find these contentions lack merit and affirm the conviction.

## FACTS

*Prosecution Evidence*

On August 26, 2011, Rosemary Flores met her boyfriend, Manuel Estrada, outside the county library in Hanford. Flores was on foot; Estrada was on his bike. Flores then noticed appellant with whom she wanted to speak. Appellant called out to her by her nickname, "'Chocolate.'" Flores told Estrada to wait. She walked over to talk to appellant. She confronted appellant and told him to stay away from her daughter's house. Estrada walked his bike to where Flores and appellant were standing. He told appellant

---

[1]     All further statutory references are to the Penal Code unless otherwise noted.

[2]     *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.

2.

to get in his truck and leave. At this time, Estrada and appellant were standing near the front end of appellant's white Suburban truck, which was facing south in one of the parking spaces in the library parking lot. Appellant told Estrada, "'I wouldn't be standing there if I were you'" and then got into his vehicle. Estrada turned around and walked his bike toward Flores. As he did so he heard a truck's engine revving behind him. When he looked back, he saw the vehicle "coming at [him]." He then dropped his bike and jumped out of the way. The truck did not hit Estrada, but it ran over his bike. Appellant slammed the truck's brakes either before or after he struck Estrada's bike. Estrada started yelling at appellant and went toward the driver's side door of his vehicle. Appellant then put his truck in reverse and fled the scene.

Flores saw the incident involving appellant's vehicle and Estrada. She heard a loud noise from the vehicle coming toward Estrada. She saw Estrada jump out of the way of the oncoming truck. She heard the truck brake and hit the bike. She saw the truck stop after hitting the bike, back up, screech its tires and drive out of the parking lot.

Hanford Police Officers Brian Scandura and Jason Gustin responded to the scene. Scandura interviewed Flores. Gustin interviewed Estrada. There were tire marks from both Estrada's bike and appellant's truck. The tire marks were consistent with Flores's statement about the incident. Estrada's bike was in "perfect condition" before being struck. The collision caused the rear tire to be out of line and it would not roll. Also, the gear mechanism was damaged. Gustin observed the damage and noted that the bike was inoperable.

Gustin went to appellant's parents' residence, noticed a white Suburban parked in the driveway and saw what appeared to be a small dent on the frame of the vehicle above the front bumper. When he arrived, police officers were already knocking on the door. The lights were off inside the residence even though it was dark outside. Finally, appellant's parents arrived and let the police inside the residence. Approximately five to

3.

10 minutes later, an officer emerged from the residence with appellant. Prior to that, officers had been at the house for at least an hour knocking on the door with no response.

Gustin spoke with appellant at the police department after giving him his *Miranda*[3] rights. Appellant gave a statement in which he said that he saw Flores near the county library, that she told him to stay away from her daughter's house and he said, "[t]hat's fine." He started to get into his vehicle to leave, but Estrada then approached him and "got in his face." Estrada told him to leave Flores alone and to leave the area. He indicated that he complied by getting into his vehicle, but Estrada continued to keep his car door open. He was finally able to shut the door and start the vehicle. When asked about the tire marks in the parking lot, appellant stated that after he got into the vehicle he may have driven toward Estrada and may have slammed on his brakes. He said he put his vehicle in reverse and then left the parking lot and went to his parents' house. When he was asked why he did not open the door at his parents' house when the police knocked on it, he replied that he did not do so because he did not want to get arrested.

An in-field show-up was conducted and both Estrada and Flores positively identified appellant as the driver of the Suburban truck.

Defense Evidence

Appellant testified in his own defense. He was previously convicted of possession of marijuana for sale and of attempted voluntary manslaughter with enhancements for a weapon and for great bodily injury.

Appellant was driving a Suburban SUV. He had just finished speaking with Flores's nephew, Marcelino Sumaya, near the library. Flores waved appellant to come toward her. They met on the sidewalk near the library. She said she was upset with him and asked him not to visit Sumaya at the house because it was upsetting the kids. He agreed not to do so. Shortly thereafter, a male (Estrada) rode up on a bike and told

---

[3]     *Miranda v. Arizona* (1966) 384 U.S. 436.

4.

appellant to quit talking to his girlfriend. Flores told appellant that Estrada was very jealous and volatile. The male told appellant to get away from Flores, and appellant felt "very threatened." At one point, the male said "You better fucking get in your car unless [*sic*] I'm going to teach you a lesson." Flores turned around and walked away. The male followed appellant to his truck and then parked his bike in front of the truck. As appellant tried to get in his truck, the male grabbed him and slugged appellant repeatedly through the open driver's door window. The male had one arm on appellant and one arm on the steering wheel of appellant's truck. Appellant backed out of the space and attempted to put the vehicle into "drive," but instead put it in "neutral," which caused the engine to rev. He then placed the vehicle into drive and it lunged forward. The male pulled on the steering wheel and it placed appellant right back into the parking space where he had just been. Appellant then slammed on the brakes and his vehicle stalled. He restarted the vehicle, honked the horn and told the male that he should not be standing there. The male then let go and backed away and appellant was able to close his truck door at that time. He backed up and saw the male reach for an object in his back pocket and toss it to Flores. He thought the object might have been a knife, but he did not know. He backed out of the space and drove away. He denied leaving the parking lot at a fast pace.

In his interview with the police, appellant told the officer that the male had rushed him and threatened him, grabbed his shirt and started punching him. He also said that the male attempted to open his driver's side door. He told the police that he did not answer the door at his parents' house because he wanted to first discuss with his parents what had happened before talking to the police. He denied telling the police he did not answer the door because he knew he was in trouble or was afraid he would be arrested. He denied driving his vehicle toward the male. He had bruising from all of the blows he received from the male, but never showed any of these to the police.

5.

*Rebuttal*

Gustin testified that appellant never told him that Estrada had ever punched him. He never complained about any pain to his body nor did the officer notice any injuries to appellant. Appellant did not say he was ever concerned for his safety and he never told the officer he suspected Estrada had a weapon.

*New Trial Motion*

Following his conviction, appellant made a motion to substitute newly retained counsel, which was granted. His new counsel filed a motion for a new trial based on alleged ineffective assistance of trial counsel. The motion included declarations from appellant and from Marcelino Sumaya.

Appellant's declaration stated that his trial attorney, Christoper Martens, did not spend any time with him or visit him in jail, did not give him a pen to write down notes during the trial, that appellant informed Martens of a "direct, corroborating alibi witness" named Marcelino Sumaya, whom Martens never contacted, and that the same was true of a second "alibi witness," Bradley Plueard, who was never contacted by Martens. Also, during jury selection, appellant informed Martens that there were three prospective jurors that he knew. Appellant requested that these individuals be questioned and probably removed, but that Martens told appellant to "[s]hut up." One of the jurors was removed by the court and the other two ended up on the jury.

Sumaya's declaration indicated that he was a percipient witness to the incident in question and that he had spoken with appellant about his knowledge of these events. He said that he observed Estrada threaten to assault appellant. As appellant got into his vehicle and attempted to close the door, Estrada reached into appellant's truck and began striking him. He saw Estrada reach into the truck and grab the steering wheel. At no time did appellant's vehicle strike Estrada's bicycle.

At the hearing on appellant's motion for a new trial, appellant and Martens testified. Martens testified that while he did not speak with appellant at the jail, he did

6.

speak with him several times in connection with various court appearances preceding the trial date. On the arraignment date, he spoke with appellant specifically about his version of what happened and appellant told him his side of the story, which was essentially what he testified to at trial. On a later date, appellant informed Martens that he had two alibi witnesses who could testify that he was not present at the crime scene during the alleged assault. Appellant told Martens that one of the alibi witnesses would say anything that appellant told him to say. Martens then told appellant that it was not a good idea to put on perjured testimony and that when people lie on the stand it usually comes out during cross-examination. Appellant did not bring up the alibi witness idea again. Appellant never provided Martens with the names of any percipient witnesses to the incident.

Regarding the jury selection process, appellant expressed concern about a juror that he knew. That juror was ultimately dismissed by the court. There was another juror that appellant thought he might have recognized, but that juror did not respond affirmatively to the judge's question about whether he or she was acquainted with any of the witnesses or appellant. Martens testified he had no arguments with appellant about which jurors to keep and which to have excused.

Appellant testified at the hearing. He said that Martens promised to visit him in the jail, but never did so. He told Martens that Sumaya was a possible witness, but he did not know whether Sumaya had seen anything or not. He never said that Sumaya was willing to say anything or that Sumaya was willing to say that appellant was not at the crime scene. During voir dire, Martens told appellant to "shut up."

## DISCUSSION

### I.      Ineffective Assistance of Counsel

#### A.      Standard of Review

The United States and California Constitutions guarantee the right to effective assistance of counsel to one charged with a crime. This protects a defendant's fundamental right to a trial that is both fair in its conduct and reliable in its result.

7.

(*Strickland v. Washington* (1984) 466 U.S. 668, 684-687 (*Strickland*); *People v. Ledesma* (1987) 43 Cal.3d 171, 215.)  The burden is on appellant to prove that counsel was constitutionally ineffective.  (*Strickland*, *supra*, at p. 696; *People v. Babbitt* (1988) 45 Cal.3d 660, 707.)  Appellant must show two things:  that counsel's performance was deficient and that his performance prejudiced the defense.  (*Strickland*, *supra*, at p. 687.)

Counsel's performance is judged under an objective standard of reasonableness. Prejudice is shown if counsel's deficiencies establish a reasonable probability that but for counsel's errors the result would have been different.  (*Id*. at pp. 687-688, 690, 694.)  In assessing whether counsel's performance is deficient under prevailing professional norms, the court indulges a strong presumption that the challenged action falls within the range of reasonable professional behavior.  (*In re Jones* (1996) 13 Cal.4th 552, 561.)  In order to conclude that counsel's performance was constitutionally deficient, the record must affirmatively disclose the lack of a rational tactical purpose for the challenged act or omission.  (*People v. Ray* (1996) 13 Cal.4th 313, 349 (*Ray*).)  "[C]ourts should not second-guess reasonable, if difficult, tactical decisions in the harsh light of hindsight." (*People v. Scott* (1997) 15 Cal.4th 1188, 1212.)

An appellate court's review of counsel's performance is a highly deferential one and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  (*Strickland, supra*, at p. 689; *In re Jones*, *supra*, 13 Cal.4th at p. 561; *People v. Ledesma*, *supra*, 43 Cal.3d at p. 216.)[4]  As appellant correctly points out in his opening brief, it is not enough to allege that the attorney's tactics were poor or that the case might have been handled more effectively; appellant must affirmatively show that counsel's omissions involved critical issues and

---

**4**      A reviewing court has the option of addressing the prejudice prong first if it is easier to dispose of an ineffectiveness claim for lack of sufficient prejudice.  (*Strickland*, *supra*, 466 U.S. at p. 697; *People v. Lewis* (2001) 26 Cal.4th 334, 363-364.)

that those omissions cannot be explained by any knowledgeable choice of tactics. (*People v. Stratton* (1988) 205 Cal.App.3d 87, 93-94.)

## B.     Failure to Investigate

Appellant criticizes trial counsel's performance on several grounds, including that he failed to adequately communicate with him, did not conduct any scene investigation, did not contact two potential witnesses, Marcelino Sumaya and Bradley Plueard, and did not interview prosecution witnesses.

Regarding communications between trial counsel and appellant, the record neither shows that their communications were inadequate nor, if inadequate, how it prejudiced the defense. While it is true that trial counsel never spoke with appellant at the jail, counsel did speak with appellant on several occasions before trial, including discussing the circumstances of the crime with which he was charged. The record shows that they communicated during the trial proceedings. The record does not disclose that appellant was ever denied the opportunity to communicate with his counsel before or during the trial. Thus, appellant has failed to meet his burden of showing that trial counsel rendered substandard legal assistance on the basis of inadequate communication. Moreover, the record is barren of any showing that any alleged failure to adequately communicate with appellant adversely affected the defense at trial. In other words, there is no evidence of prejudice. Accordingly, this ground for asserting ineffective assistance of counsel fails.

## C.     Lack of Crime Scene Investigation

Appellant criticizes trial counsel for not conducting any crime scene investigation in that counsel did not take any photographs, did not prepare any diagrams, maps or sketches, and did not try to locate surveillance cameras or percipient witnesses. The record, however, does not affirmatively disclose that trial counsel did not investigate the scene. Appellant simply assumes that he did not because he did not take any photographs, prepare diagrams or locate any surveillance cameras. The record does not disclose that there were any surveillance cameras in the area. More importantly, there

9.

has been no showing that counsel's performance was objectively deficient because he did not take photographs, prepare diagrams or try to locate surveillance cameras. Appellant has failed to carry his burden. It follows that appellant has also failed to show any prejudice from these alleged failures. He has failed to explain how any particular photograph, diagram or surveillance film would have assisted his defense. Nor has he shown that counsel's failure to interview the prosecution witnesses would have benefitted the defense in some real way. Accordingly, this ground for alleging ineffective assistance of counsel also fails.

### D.    Failure to Interview Potential Defense Witnesses

Appellant's primary criticism of his trial counsel's performance is that he failed to contact Sumaya and Plueard as potential defense witnesses. At the hearing on his new trial motion, appellant personally testified and also submitted his own written declaration and that of Sumaya. In denying his motion, the trial court specifically determined that neither Sumaya nor appellant were credible. By implication, the trial court found the testimony of appellant's trial counsel, Martens, credible.

Martens testified that, at arraignment, he and appellant had a discussion about the events that led to his arrest. Appellant told Martens essentially what he testified to at trial. That version included his admission that he was present at the scene when the encounter with Estrada occurred. Appellant never deviated from that account. On a subsequent date before trial, appellant told Martens that he had the name of an "alibi" witness who would testify that appellant was not present at the crime scene when the alleged crime occurred. When Martens asked him if this witness wouldn't be lying, appellant's response was that he would testify to "whatever."

Appellant argues that Sumaya was not in fact an alibi witness but an eyewitness, and would have corroborated appellant's testimony and contradicted the testimony of the prosecution witnesses. In his declaration submitted in support of his motion for a new trial, appellant states that he handed his lawyer a handwritten letter on the day he was

10.

arraigned, informing him that he had a "direct, corroborating alibi witness in this matter, Mr. Marcelino Sumaya." Thus, the record shows that appellant described Sumaya as an alibi witness to Martens. Appellant, however, was not asserting alibi as a defense. Appellant was asserting that Estrada assaulted him. An alibi witness would have contradicted appellant's own version of what happened. It would also have caused Martens to suborn perjury, inasmuch as his own client told him repeatedly that he was at the scene when these events occurred. Not only was it not ineffective assistance of counsel for Martens not to have called Sumaya as a witness, it would have been unethical for Martens to have put Sumaya on the stand believing that the testimony he was eliciting was perjurious. (*People v. Riel* (2000) 22 Cal.4th 1153, 1217.) While counsel may ethically present evidence that they suspect but do not personally know is false, they may not do so if there is a firm, factual basis for believing the testimony to be false. (*Id*. at p. 1217.)

Here, there could be no doubt that Sumaya's alibi testimony would be fabricated, given that appellant told Martens he was present when these events occurred. Clearly, Martens's performance was not deficient and appellant was not denied effective assistance of counsel based on Martens's failure to call Sumaya as a witness. The same is true regarding his failure to call Plueard as a witness. In his own declaration appellant stated that he told Martens that Plueard, who was then incarcerated at the Kings County Jail, was "able and willing to testify as a corroborating alibi witness on [his] behalf." Martens rightfully concluded that appellant wanted these witnesses to testify to a concocted alibi defense. Martens properly refused to participate in a scheme to suborn perjury.

11.

### E. Counsel's Failure to Request Instruction Supporting Defense of Accident/Mistake

Appellant complains that his trial counsel failed to request an instruction regarding the defense of accident by requesting either CALCRIM No. 3404 (Accident/Mistake) or a pinpoint instruction. Since a trial court does not have a sua sponte duty to instruct on an accident defense (*People v. Anderson* (2011) 51 Cal.4th 989, 996-998), appellant argues that his counsel's failure to request an instruction on accident constituted ineffective assistance of counsel, emphasizing that he testified he never drove the car toward Estrada and it was never his intention to hit the bicycle.

There must be evidence sufficient to warrant a particular jury instruction. (*People v. Salas* (2006) 37 Cal.4th 967, 982-983.) The question is whether there was sufficient evidence of accident or mistake to justify the giving of such an instruction in this case. We find such evidence lacking in this record.

Appellant did not testify that he accidentally or mistakenly assaulted Estrada with the vehicle. On the contrary, he testified that he never drove his truck towards Estrada. There was no evidence that the subject incident occurred as the result of appellant's accidental behavior or mistake. Viewing the evidence in the light most favorable to appellant, the evidence does not support the giving of an instruction on the defense of accident. Since the court has no duty to give an instruction that is not supported by substantial evidence (*People v. Bolden* (2002) 29 Cal.4th 515, 558), trial counsel did not provide ineffective assistance of counsel in failing to request an instruction on the defense of accident.

### F. Counsel's Failure to Object to CALCRIM No. 372 (Flight/Consciousness of Guilt)

The trial court instructed the jury with CALCRIM No. 372 (Flight/Consciousness of Guilt). Defense counsel did not object to the giving of this instruction. On appeal, appellant argues that appellant's act of driving away from the scene was not flight; he

12.

"was simply trying to go home." Accordingly, appellant argues that his attorney's representation was deficient in failing to object to the instruction.

Appellant cites *Ray*, *supra*, 13 Cal.4th at page 345, for the proposition that the flight instruction is proper where the evidence shows that the defendant departed the crime scene under circumstances "'suggesting'" that his movement was motivated by a consciousness of guilt. Here, the testimony of Estrada and Flores provided sufficient evidence to warrant the giving of the instruction. Estrada testified that after he was nearly struck by appellant's truck, appellant "fled the scene." Flores's testimony was similar. She testified that after Estrada was nearly struck, appellant backed up his vehicle rapidly, screeched his tires and "peeled off into the road." This evidence meets the *Ray* standard because it suggests that appellant fled the scene to avoid responsibility for what occurred, that is, was motivated by a consciousness of guilt. Therefore, counsel was not neglectful in failing to object to this instruction.

## G. Failure to Impeach Prosecution Witnesses

Appellant contends that trial counsel failed to impeach prosecution witnesses with their prior inconsistent statements, their contradictory trial statements and prior convictions. As to the latter, the jury was informed of the prior convictions by the prosecutor, but appellant complains that his counsel did not mention them and did not use them to attack the witnesses' credibility. Without any citation to legal authority, appellant criticizes his counsel's cross-examination of prosecution witnesses primarily on the basis that they were not specifically confronted with certain enumerated, alleged inconsistencies and contradictions in prior statements or testimony.

In order to prevail on an ineffective assistance of counsel claim, the record must affirmatively show the lack of a rational, tactical purpose for the challenged act or omission. (*Ray*, *supra*, 13 Cal.4th at p. 349.) The object of an ineffectiveness claim is not to grade counsel's performance. (*Strickland*, *supra*, 466 U.S. at p. 697; *In re Cox* (2003) 30 Cal.4th 974, 1019.)

13.

Cross-examination of prosecution witnesses is inherently tactical and reflects the exercise of discretion and judgment of the trial attorney. Experience shows that no two competent trial attorneys will cross-examine a witness the same way. Depending on style, tactics and preference, different attorneys may conduct cross-examination of adverse witnesses differently by asking different questions in a different order and with different emphasis. Some may choose to conduct lengthy cross-examination, while others may opt for limited cross-examination. Similarly, no two trial attorneys will attempt to impeach witnesses in the same manner. Simply because an attorney believes that a witness has been inconsistent in an earlier statement does not mean that the attorney's performance is deficient in failing to attempt to impeach the witness with that prior statement. Effective trial counsel are usually reluctant to engage in prolonged cross-examination over matters that a jury might regard as relatively immaterial. And, even if material, there may be tactical reasons for limiting one's cross-examination to a few selected points rather than spending additional time attempting to impeach the witness on each and every purportedly prior inconsistent statement.

Appellant's argument on appeal ignores the wide discretion given to trial counsel in conducting cross-examination of prosecution witnesses. It is inappropriate for a reviewing court to engage, as appellant urges us to do, in second-guessing the questions counsel asked those witnesses and whether additional questions should have been asked. The record must affirmatively disclose the lack of a rational tactical purpose for the challenged act or omission. (*Ray*, *supra*, 13 Cal.4th at p. 349.) "[C]ourts should not second-guess reasonable, if difficult, tactical decisions in the harsh light of hindsight." (*People v. Scott*, *supra*, 15 Cal.4th at p. 1212.)

This record fails to disclose that counsel had no rational, tactical purpose in the manner in which he questioned these witnesses, including his failure to ask the questions that appellant now argues should have been asked. Accordingly, we find no ineffective assistance of counsel on this ground.

14.

**H.    Failure to Object to Prosecution's Use of Appellant's Prior Convictions**

Before appellant testified, the prosecutor asked the court for permission to introduce a prior conviction for attempted voluntary manslaughter with great bodily injury and use of a weapon that occurred in 1994.  Trial counsel did not object to the use of this conviction.  Appellant now complains that he should have objected because the offense was 17 years old at the time of trial and that there "was a substantial argument to be made under Evidence Code section 352, that the probative value of the conviction was outweighed by the danger of prejudice."

Appellant does not contend that this conviction does not qualify as a crime of moral turpitude, because indeed it does.  (*People v. Coad* (1986) 181 Cal.App.3d 1094, 1110.)  In deciding whether to allow impeachment with this offense, the court exercised its discretion under Evidence Code section 352.  (*People v. Castro* (1985) 38 Cal.3d 301, 306-307.)  Some of the factors the court is supposed to consider are whether the prior conviction reflects on the witness's honesty or veracity, whether it is near or remote in time, whether it is similar to the conduct charged and what effect its admission would have on the defendant's decision to testify.  (*People v. Clark* (2011) 52 Cal.4th 856, 931.)

The attempted voluntary manslaughter conviction with great bodily injury and use of a weapon is a crime of moral turpitude.  This offense did not involve conduct similar to that charged in the instant case.  The record does not indicate that admission of appellant's prior attempted voluntary manslaughter conviction had any effect on his decision to testify and indeed appellant did testify.

Appellant's primary argument is that the conviction was remote because it occurred in 1994.  But, as the People point out, appellant was sentenced to eight years five months for that offense and thereafter committed several other offenses prior to the assault in the instant case.  Thus, if appellant's trial counsel had objected to the use of this conviction and the court had exercised its discretion under Evidence Code section 352, this court would have to conclude that it was probable the trial court would have

15.

excluded this conviction.  On this record and for the reasons already noted, we cannot do so.  Appellant has not shown that if an objection had been made, the trial court would have likely excluded the conviction.  Therefore, the claim of ineffective assistance of counsel on this ground fails.

## I.      Trial Counsel's Reasonable Doubt Argument

Appellant cites an excerpt from trial counsel's closing argument as evidence that he misstated the law on reasonable doubt.  That excerpt is as follows:

> "'Proof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the charge is true.  The evidence need not eliminate all possible doubt because everything in life is open to some possible or imaginary doubt.'

> "Now, there's two ways to look at reasonable doubt.  And one is the definition of what it is, and the other is the definition of what it is not.

> "Reasonable doubt or proof beyond a reasonable doubt is something that leaves you with an abiding conviction, something that you can be sure on it.  [*sic*]  You can hang your hat and say, you know what, this is what the facts are, and we know that this is what happened.

> "But what is not reasonable doubt, and that's also defined and I think it's a little bit more helpful than the words abiding conviction because that's really hard for us too.  It's really for me as an attorney to explain to you what an abiding conviction is, but I can tell you what reasonable doubt isn't and it's doubt that is imaginary, and if you have doubt but it's really something that really couldn't happen, well then that's proof beyond a reasonable doubt because everything in life, there's always some possibility that's not realistic.  If there's doubt that's not realistic, then that's then that doesn't stop you from proof beyond a reasonable doubt.

> "But if the doubt is realistic, if it's possible in your mind that that's how it happened, if it's possible that, how [appellant] told you what happened happened, then that's not beyond a reasonable doubt.

> "And I think it all goes back to where you as jurors, you reject what's unreasonable, you don't believe what's unreasonable, you don't believe the unreasonable testimony.  But if it's reasonable then you take that into consideration and you determine what the weight and the value of the evidence is.  And *if it's reasonable to believe that [appellant] didn't do*

16.

*this, and it's reasonable to believe that his version of what happened is true* then you must find him not guilty."

Based on this argument, appellant contends that his trial attorney portrayed the determination of guilt or innocence as simply a reasonableness contest between two competing versions of events. We disagree. What counsel said was that if there were two reasonable versions of an event and one of those versions was the defense version, the jury had to accept the defense version as true and acquit him. This is in accordance with the law. (CALCRIM Nos. 220 & 224.) Trial counsel did not misstate the reasonable doubt standard.

## J. Failure to Object to Inadmissible Evidence

Appellant contends that his trial counsel prejudiced the defense by failing to object to several items of inadmissible evidence. He acknowledges that it is his burden to affirmatively show that the omissions of counsel involved a critical issue and that they cannot be explained on the basis of any knowledegable choice of tactics. (*People v. Stratton*, *supra*, 205 Cal.App.3d at pp. 93-94.) Nevertheless, he cites several examples of his trial counsel's failure to object to evidence and his cross-examination of prosecution witnesses that he contends reinforced the prosecution's case.

Appellant cites as an example a portion of the direct examination of Gustin in which he was asked whether appellant told him "he thought he was in trouble for what had happened at the parking lot?" He contends this question was leading and compound, and was particularly prejudicial because it reinforced the assumption that appellant's failure to open the door to the police and his statements to the police were attributable to a consciousness of guilt related to the alleged assault. He contends that this particular line of questioning left the jury with the impression that appellant admitted he knew he was in trouble for what happened at the parking lot, when in fact his statement to the police that he knew he was in trouble was not in response to a question about what happened at the parking lot. In other words, appellant contends that the prosecutor

17.

gratuitously added the language "for what had happened at the parking lot" to an earlier question and that defense counsel should have objected to this.

Immediately after the assault incident occurred, appellant left the scene and went to his parents' residence where he refused to answer the knock on the door by the police. He told the police later that he knew he was in trouble. It was not an unreasonable question to ask him whether he thought he was in trouble for what had happened at the parking lot.

Appellant's next criticism is that trial counsel failed to object when Estrada testified that appellant "'fled the scene.'" As the People aptly point out, a reasonable tactical reason that counsel may have decided not to object to Estrada's testimony was to avoid having the prosecutor elicit more details from the witness in order to explain the characterization that appellant "'fled the scene.'" Counsel could have determined that it was less damaging to have Estrada describe appellant's departure in those words than to give a more detailed explanation of how he sped away, such as Flores's description that appellant backed up his vehicle rapidly, screeched his tires and "peeled off into the road."

Finally, appellant contends that defense counsel repeatedly phrased his questions in such a way as to assume appellant's guilt. In one instance he referred to appellant's truck by saying "'I mean the truck that hit [Estrada's] bike.'" In other questions he asked about what witnesses saw or heard before the truck hit the bike. The defense position was that appellant did not strike the bike, although the evidence was overwhelming that he did. Regardless, the questions did not concede that appellant's truck struck Estrada's bike; they asked Flores about what she observed, using her previous testimony as a point of reference. The People also point out correctly that even if counsel had conceded that appellant's truck had hit Estrada's bike, it was not an admission of guilt as to the charged offense. There was no ineffective assistance of counsel on this ground.

### K. Breach of Ethical Duties

Appellant contends that his trial counsel adopted an adversarial position against his former client at the hearing on the motion for a new trial. He argues that offering testimony that he didn't interview appellant's witnesses because he believed them to be alibi witnesses and that their testimony would be perjury constituted a breach of his ethical duties to his client, including the duties of loyalty and confidentiality as well as a violation of the attorney/client privilege. We disagree. It was appellant who brought the motion for a new trial, contending that there was ineffective assistance of counsel that prejudiced his case. As such, the testimony of his trial counsel was within the scope of the matters placed into issue by appellant. There was no breach of the trial counsel's ethical duty or violation of the attorney/client privilege. (*People v. Ledesma* (2006) 39 Cal.4th 641, 691.)

### L. Prejudice

Even assuming, arguendo, that trial counsel's performance was objectively deficient in one or more of the grounds asserted, appellant has failed to show that he was prejudiced thereby. The evidence against appellant was strong. The two eyewitnesses offered damning evidence against him. The damage to the front of his vehicle and to the bike supported the witnesses' versions of what happened. Appellant fled from the scene. He refused to come to the door when the police arrived. His statement to the police differed significantly from his trial testimony. It was appellant's burden to show how his counsel's substandard representation prejudiced the trial's outcome. He did not carry that burden.

## II. Insufficiency of Evidence

### A. Standard of Review

When a conviction is challenged on the ground that the evidence was insufficient to support the verdict, the reviewing court applies the substantial evidence test. The appellate court reviews the entire record in the light most favorable to the judgment to

determine whether there is substantial evidence from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt.  By substantial evidence it is meant evidence that is reasonable, credible and of solid value.  (*People v. Johnson* (1980) 26 Cal.3d 557, 578; *Jackson v. Virginia* (1979) 443 U.S. 307, 318-319.)  The reviewing court need not be convinced that the evidence proves the allegations beyond a reasonable doubt; rather, it must determine whether any rational trier of fact could be so persuaded.  (*People v. Johnson*, *supra*, at p. 576.)  The judgment may not be reversed unless it is clear that under no hypothesis whatever is there sufficient, substantial evidence to support it.  (*People v. Haynes* (1967) 253 Cal.App.2d 1060, 1062; *People v. Hicks* (1982) 128 Cal.App.3d 423, 429.)  On the other hand, where the record establishes either a physical impossibility that statements testified to by a witness are untrue or that their falsity must be apparent without resorting to inferences or deductions, the reviewing court may reject that testimony even though it was believed by the trier of fact.  (*People v. Barnes* (1986) 42 Cal.3d 284, 306; *People v. Friend* (2009) 47 Cal.4th 1, 41.)

### B.    There Was Sufficient Evidence to Support the Conviction

Appellant was convicted of assault with a deadly weapon.  The elements of this offense are:  (1) appellant committed an act with a deadly weapon other than a firearm; (2) appellant acted willfully; (3) when he acted, appellant was aware of facts that would lead a reasonable person to realize that his act by its nature would directly and probably result in the application of force to someone; and (4) when appellant acted, he had the present ability to apply force with a deadly weapon other than a firearm to a person. (CALCRIM No. 875.)  Appellant contends that the evidence supporting the first element is inherently improbable and therefore does not satisfy the substantial evidence test.  We disagree.

Appellant argues that from Estrada's testimony, the alleged assault is a "[p]hysical [i]mpossibility" and that Estrada's testimony is patently false.  Separate and apart from Estrada's testimony was the testimony of Flores.  The testimony of a single witness can

prove any fact. (CALCRIM No. 301.) Flores testified that after the three of them finished speaking, she turned around, heard a loud noise like a vehicle coming close, and when she turned around said "'Oh, my God,' that's what—he's going to hit him—that's what I thought to myself. [¶] My boyfriend had his hands on the bike and he jumped away from the bike and the truck [driven by appellant] hit the bike and knocked it down." Later she testified that Estrada jumped away from the bike and the truck hit the bike. "He made it just in time to get away from the truck—the bike." This testimony was sufficient to support the first element of the offense.

Appellant further contends that the evidence was insufficient to prove the element of intent. We disagree.

Appellant asserts that the only evidence in support of intent was Estrada's statement that just before he got into his vehicle, appellant looked at him and said "'I wouldn't be standing there if I were you.'" That statement coupled with the eyewitness accounts of Estrada and Flores provided sufficient evidence that appellant drove his vehicle at Estrada with intent. Appellant's testimony to the contrary is not binding on this court. The jury was free to weigh the evidence and either find that appellant's conduct was willful or not. By its verdict, it found that appellant acted willfully and the evidence supports that finding.

## III. Prosecutorial Misconduct

Appellant contends that the prosecutor committed multiple acts of misconduct during the trial. We conclude that no misconduct occurred.

### A. Misstatement of Reasonable Doubt

During rebuttal argument, the prosecutor stated:

> "The next point that the defense makes is reasonable doubt. The definition of reasonable doubt, just listen to the words 'If you have doubt it must be reasonable.' If you have doubt about [appellant's] guilt it must be a reasonable doubt in light of all the evidence."

21.

Citing *People v. Hill* (1998) 17 Cal.4th 800, 831 (overruled on another ground in *Price v. Jenkins* (2001) 25 Cal.4th 1046, 1069, fn. 13), appellant contends that the prosecutor's statement shifted the burden of proof from the prosecution to the defense. In *Hill*, the prosecutor argued:

> "'[I]t must be reasonable. It's not all possible doubt. Actually, very simply, it means, you know, you have to have a reason for this doubt. *There has to be some evidence on which to base a doubt*.'" (*Ibid*.)

The defense objected and the trial court overruled the objection. The prosecutor then continued:

> "'There must be *some evidence* from which there is a reason for a doubt. You can't say, well, one of the attorneys said so.'" (*Ibid*.)

While acknowledging that it was a "close" call, the court concluded that the prosecutor committed misconduct by misstating the law because taken in context the comments were reasonably likely to be understood by the jury to mean the defendant had the burden of producing evidence to demonstrate a reasonable doubt as to his guilt. (*Id*. at p. 832.)

In the instant case, the prosecutor did not misstate the law by arguing directly or indirectly that appellant had the burden of producing evidence to demonstrate reasonable doubt of his guilt. She stated that any doubt must be reasonable and that any doubt about appellant's guilt must be reasonable in light of all of the evidence. The jury instruction specifically advised the jury that in deciding whether the People proved their case beyond a reasonable doubt, "[Y]ou must impartially compare and consider all the evidence that was received throughout the entire trial. Unless the evidence proves [appellant] guilty beyond a reasonable doubt, he is entitled to an acquittal and you must find him not guilty." (CALCRIM No. 220.) The prosecutor's comments did not conflict with the reasonable doubt instruction or ask the jury to shift the burden to appellant.

**B.  Cross-examination of Appellant Regarding Veracity of Other Witnesses**

Appellant complains that the prosecutor repeatedly asked appellant whether other witnesses were lying.  He contends this constituted misconduct.  She asked him whether Flores, Estrada and Gustin were lying.

Both parties acknowledge that case law presents differing views on whether a prosecutor's "were they lying" questions are reversible error.  They must be evaluated in context.  They are not always admissible or always inadmissible.  (*People v. Chatman* (2006) 38 Cal.4th 344, 380-384 (*Chatman*).)  "'[W]ere they lying'" questions are impermissible when they are argumentative or designed to elicit speculative or irrelevant testimony, but are permissible if the witness has personal knowledge that allows him to provide competent testimony "that may legitimately assist the trier of fact in resolving credibility questions." (*Id*. at p. 384.)  Thus, "[a] defendant who is a percipient witness to the events at issue has personal knowledge whether other witnesses who describe those events are testifying truthfully and accurately."  (*Id*. at p. 382.)  And one who is a "percipient witness to the events at issue" or "knows the other witnesses well" may be able to provide insight into whether the other witnesses are "intentionally lying or are merely mistaken."  (*Ibid*.)  However, when a prosecutor uses "were they lying" questions to berate a defendant and to force him to call officers liars in an attempt to inflame the passions of the jury, misconduct occurs.  (*People v. Zambrano* (2004) 124 Cal.App.4th 228, 242.)

Appellant had personal knowledge of the incident at issue.  His trial testimony directly conflicted with significant portions of the testimony of the prosecution witnesses.  Under the *Chatman* standard, the prosecutor did not commit misconduct in asking "were they lying" questions of appellant.  Parties are accorded wide latitude in conducting cross-examination.  (*Chatman*, *supra*, 38 Cal.4th at p. 382.)  The cross-examination of appellant concerning the differences between his recollection of events and that of the other witnesses was legitimate inquiry and could properly assist the trier of fact in

23.

ascertaining whom to believe. (*Id*. at p. 383.) These questions did not constitute prosecutorial misconduct.

### C. Doyle[5] Error

In *Doyle*, the United States Supreme Court held that the due process clause of the Fourteenth Amendment is violated when the prosecutor introduces evidence of a defendant's silence at the time of arrest and after receiving *Miranda* warnings. (*Doyle*, *supra*, 426 U.S. at p. 619.) Such is improper impeachment because it is using his silence to impeach a defendant while having previously assured him that his silence would not be used against him. (*Wainwright v. Greenfield* (1986) 474 U.S. 284, 291.) *Doyle* error is established when the prosecution makes use of a defendant's postarrest silence for impeachment purposes and the trial court permits that use. (*People v. Evans* (1994) 25 Cal.App.4th 358, 368.)

Here, Gustin spoke with appellant at the Hanford Police Department after advising him of his *Miranda* rights. Appellant stated that he understood his rights. He spoke with Gustin for about 30 minutes. Toward the end of their conversation, appellant asked for counsel and the interview concluded.

During the prosecutor's cross-examination of appellant, she asked if appellant mentioned to the officer any bruising that he received at the hands of Estrada, whether appellant told the officer that he was "wailed" on over 20 times by Estrada, whether he ever showed the officer any of his injuries and whether he told the officer that Estrada reached from his pocket and threw something to Flores that he thought was a weapon. During her closing argument, the prosecutor stated:

> "The other problem with [appellant's] story is he talks about the fact that he was physically assaulted by Mr. Estrada. He was wailed 20 times over with a closed fist. Never do we ever hear this from [appellant] until the day of trial. He had a 30 minute interview with an officer from

---

**5** *Doyle v. Ohio* (1976) 426 U.S. 610 (*Doyle*).

[Hanford Police Department].  Never did he mention that he was wailed.  Never did he say he was in pain.  Never did he lift up his sleeve to show the bruises he claimed he had.  Never [did] he tell the officer, 'My life was in danger.  I believe my life was in danger.'  That, in fact, 'I'm pretty sure the guy had a knife or a gun that he threw away as I was leaving.'  Why not?  Why didn't he tell the officer?  Because it's a fabrication for jury trial, a lie made up to tell you."

Appellant argues that the above stated questions and argument constitute *Doyle* error because they repeatedly reference appellant's postarrest silence.  We disagree.  The questions appellant was asked and the arguments of counsel pertained to the 30-minute interview, not to his postinterview silence.  He was given his *Miranda* rights and claimed he understood them before the 30-minute interview occurred.  The prosecutor made no mention of the postinterview time period.  Instead, the questions and argument related to the interview in which appellant freely answered questions and supplied information to the officer.  There was no *Doyle* error because none of the prosecutor's questions or comments in argument was directed to the time period after the interview ended.

### D.    Witness Vouching

During the prosecutor's direct examination of Officer Scandura, who was the first officer to respond, he was asked about skid marks.  The officer affirmed that he noticed skid marks, which Flores pointed out to him.  The prosecutor then asked whether the skid marks seemed consistent with the story that Flores was telling him, to which the witness answered, "Yes."  When questioning Gustin, the prosecutor asked if there was any Suburban vehicle damage that was consistent with the witnesses' statements and what that damage was.  Appellant contends that in both instances, the prosecutor was improperly vouching for the credibility of a witness.  We disagree.

A prosecutor may not vouch for the credibility of witnesses or otherwise bolster their veracity by referring to evidence outside of the record.  However, as long as the prosecutor's assurances regarding the honesty or reliability of the witness are based on the facts of the record and the inference is reasonably drawn therefrom rather any

purported knowledge or belief, the comments cannot be characterized as improper vouching. (*People v. Ward* (2005) 36 Cal.4th 186, 215.)

In neither example cited by appellant did the prosecutor improperly vouch for the credibility of a witness. Regarding Scandura's questioning of Flores, it was not improper to ask whether skid marks Flores identified for the officer were consistent or inconsistent with the account of the events that she conveyed. The fact that the skid marks were consistent with the account she relayed did not establish what vehicle left those skid marks or whether a crime had been committed. Nor did the prosecutor's questions refer to evidence outside of the record. The question merely asked whether Flores's description of how this incident occurred was consistent with the location of the skid marks the officer observed. The same is also true of the prosecutor's examination of Gustin. Gustin's testimony that there was a small dent to the front of appellant's vehicle that was consistent with the area in which Estrada said his bike was struck did not in and of itself establish Estrada as a truthful witness. The questions did not refer to evidence outside of the record. Instead, the questions provided further clarity as to whether the witnesses' statements as to the damage to the front of the Suburban was consistent with the witnesses' description of the event. There was nothing improper about this line of questioning and it did not violate the rule against vouching for a witness's credibility.

## IV. Conclusion

We find no merit to appellant's contentions of ineffective assistance of counsel, insufficiency of the evidence and prosecutorial misconduct. Further, we find that appellant has failed to establish that any of the alleged errors were prejudicial, individually or cumulatively.

## DISPOSITION

The judgment is affirmed.

_____
Kane, Acting P.J.

WE CONCUR:


_____
Peña, J.


_____
Sarkisian, J.*

---

\*      Judge of the Fresno Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

27.